**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **MICHAEL COUSIN, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF TRESHON COUSIN AND AS TUTOR FOR THE MINOR CHILDREN, ALANNA COUSIN AND JULIUS MCFARLAND, JR.**<br>　　　　　　　　**Plaintiffs** | **CIVIL ACTION NO.**<br><br><br><br>**SECTION:** |
| **VERSUS** | |
| **ST. TAMMANY PARISH JAIL, ST. TAMMANY PARISH SHERIFF'S OFFICE, DEPUTY PATRICK MCKNIGHT, CORPORAL BRIGID ENGLISH, NURSE JENNIFER WALIGORA, DEPUTY JESSICA RODEN, DEPUTY GEORGIA ALEXANDER SHERIFF JACK STRAIN, JR, IN HIS CAPACITY AS SHERIFF OF THE PARISH OF ST. TAMMANY, AND ATN, INC.**<br>　　　　　　　　**Defendants** | **JUDGE:**<br><br><br><br>**MAGISTRATE:** |

---

### COMPLAINT

　　The Complaint of **MICHAEL COUSIN**, of legal age, domiciled in and a resident of St.

Tammany Parish, Louisiana, respectfully represents:

### <u>PARTIES</u>

1.

　　Made Plaintiffs herein are:

1

a. **MICHAEL J. COUSIN**, individually and on behalf of his deceased daughter, **TRESHON COUSIN**.  Plaintiff is a person of legal age and majority, who is domiciled in St. Tammany Parish, Louisiana;

b. **TRESHON M. COUSIN,** whose interests herein are represented by her father, Michael Cousin.  At the time of Plaintiff's death she was a person of full age and majority, who was domiciled in St. Tammany Parish, Louisiana;

c. **ALANNA COUSIN**, whose interests herein are represented by his Tutor, Michael Cousin.  Plaintiff is a minor, who is domiciled in St. Tammany Parish, Louisiana; and

d. **JULIUS MCFARLAND, JR.**, whose interests herein are represented by his Tutor, Michael Cousin.  Plaintiff is a minor, who is domiciled in St. Tammany Parish, Louisiana.

2.

The following parties are made defendants herein:

a. **ST. TAMMANY PARISH JAIL** (hereinafter STPJ), is a correctional facility located at 1200 Champagne Street, Covington, Louisiana 70458;

b. **ST. TAMMANY PARISH SHERIFF'S OFFICE** (hereinafter STPSO), a governmental entity of the Parish of St. Tammany, which is responsible for all corrections and security functions at the jail. STPSO is located at 701 N. Columbia St., Covington, Louisiana 70433, and having as its agent for service of process, Sheriff Jack Strain, Jr., or in his absence, service upon any of his employees of suitable age and discretion;

2

c. **DEPUTY PATRICK MCKNIGHT,** believed to be a person of full age of majority, whose last known business address is 1200 Champagne Street, Covington, Louisiana 70458;

d. **CORPORAL BRIGID ENGLISH,** believed to be a person of full age of majority, whose last known business address is 1200 Champagne Street, Covington, Louisiana 70458;

e. **NURSE JENNIFER WALIGORA**, believed to be a person of full age of majority, whose last known business address is 1200 Champagne Street, Covington, Louisiana 70458;

f. **DEPUTY JESSICA RODEN**, believed to be a person of full age of majority, whose last known business address is 1200 Champagne Street, Covington, Louisiana 70458;

g. **DEPUTY GEORGIA ALEXANDER**, believed to be a person of full age of majority, whose last known business address is 1200 Champagne Street, Covington, Louisiana 70458;

h. **SHERIFF JACK STRAIN, JR., IN HIS CAPACITY AS SHERIFF OF THE PARISH OF ST. TAMMANY**, an individual above the age of majority having a business address of 701 N. Columbia St., Covington, Louisiana 70433**;**

i. **ABC INSURANCE COMPANY,** alleged on information and belief, a foreign or domestic insurance corporation, authorized to do and doing business in the State of Louisiana as the insurer of **ST. TAMMANY PARISH JAIL** and **ST. TAMMANY PARISH SHERIFF'S OFFICE**, and having appointed an agent for service of process, the Louisiana Secretary of State;

3

j. **ATN, INC.,** doing business in the State of Louisiana as **AMTEL, INC. (hereinafter "AmTel"),** is a for profit corporation registered with the Georgia Secretary of State, located at 913 Dilworth Street, St. Mary's, Georgia, 31558, and having appointed as agent for service of process, NATIONAL REGISTERED AGENTS, INC.,  located at 800 S. Gay Street, Suite 2021, Knoxville, Tennessee 37929-9710; and

k. **XYZ INSURANCE COMPANY**, alleged on information and belief, a foreign or domestic insurance corporation, authorized to do and doing business in the State of Louisiana as ATN, INC. and/ or AMTEL, Inc.'s insurer. And having appointed an agent for service of process, the Louisiana Secretary of State.

## JURISDICTION AND VENUE

1.

This is an action at law to redress the deprivation under color of statute, custom or usage of a right, privilege and immunity secured to Plaintiff, **TRESHON COUSIN**, by the Eighth and Fourteenth Amendments to the Constitution of the United States of America and 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), and arising under the laws of the State of Louisiana.  Damages are also sought pursuant to 42 U.S.C. § 1988. The jurisdiction of this Court is invoked under 28 U.S.C. § 1331 and § 1343.  Plaintiff  also invokes the pendant jurisdiction of this Court.

2.

Venue is proper in this Court under  42 U.S.C. § 1391(b) as a substantial part of the alleged incidents described herein were committed, at least in part, within the jurisdiction of the United States District Court for the Eastern District of Louisiana.

## FACTUAL BACKGROUND

1.

On or about June 28, 2013, Plaintiff, **TRESHON COUSIN,** was arrested by a St. Tammany Parish Sheriff's Office Deputy on a misdemeanor contempt of court charge for unpaid court fees in the amount of $240.00.

2.

At approximately 6:52 p.m., Deputies transported Ms. Cousin to the St. Tammany Parish Jail located at 1200 Champagne St, Covington, LA 70433.

3.

Upon arrival and during initial intake, Ms. Cousin was not asked proper questions regarding her mental state, or whether she had used drugs or alcohol.

4.

During intake, Deputy Georgia Alexander called Nurse Jennifer Waligora, who obtained a urine sample for purposes of drug screening.  The drug screen results were positive for Methamphetamine and Marijuana.

5.

No formal Drug Testing Report was prepared, so there is no record whether Ms. Cousin even consented to the drug test.

6.

Further, STPSO/STPJ personnel failed to continue the mental health screening process despite evidence of schedule II narcotics and the obvious potential for drug withdrawal.

7.

Studies have found that Methamphetamine users are at an increased risk for attempted suicide.[1]

8.

No further screening or evaluation was performed by STPSO/STPJ personnel to gauge Ms. Cousin's mental state and she was immediately placed in Female Holding Cell No. 1 with five (5) other females all dressed in prison uniforms. Treshon was still wearing her own attire of shorts, a T-shirt, and flip-flops.

9.

Ms. Nancy Gaines, one of the women who was initially in Female Holding Cell No. 1 with Ms. Cousin stated that Ms. Cousin was acting "crazy" and that Ms. Cousin seemed "on edge" as if she were "coming off of drugs".   Ms. Gaines, as well as all other arrestees/detainees/prisoners present in the holding cell, stated that they observed Ms. Cousin attempting to make numerous phone calls, but that she was unable to speak to anyone.

10.

In fact, Ms. Cousin made a total seventeen (17) unsuccessful calls.

---

[1] *See* http://www.mailman.columbia.edu/news/more-other-drugs-injected-meth-associated-increased-risk-attempted-suicide.

11.

A review of the transcript of Ms. Cousin's telephone calls revealed that not a single person Ms. Cousin attempted to contact could navigate the automated system that is supposed to provide the detainee with two free minutes of phone time.

12.

The following events are as depicted on the video surveillance footage provided to plaintiffs by defendants STPSO/STPJ:

– At approximately 8:00 p.m., Ms. Gaines and all other arrestees/detainees/prisoners are moved to a different location.  Ms. Cousin was left alone, in effect solitarily confined to Female Holding Cell No. 1.

– Ms. Cousin is then observed standing near the exit all alone in a cell littered with food and trash.

– Roughly twenty (20) minutes later she is observed trying to stay warm by placing her arms inside of her t-shirt.  It also appeared Ms. Cousin was crying.  Treshon then attempted to place one last phone call at 8:23 p.m. and was again unable to contact anyone due to the phone service.

– At 8:24 p.m., Ms. Cousin placed the extra-long telephone cord around her neck and then dropped to her knees in an attempt to hang herself.

– Treshon hanged from the extra-long telephone cord placed around her neck for over 20 minutes.

13.

By the time Treshon was discovered she had been left alone and unsupervised for approximately 45 minutes.

14.

It wasn't't until 8:45 p.m. that Deputy Patrick McKnight, who was assigned to work the B-Main Panel Operator, discovered Ms. Cousin hanging in her cell. Deputy McKnight had left his post unattended for approximately 45-50 minutes.

15.

The B-Main Panel Operator is responsible for supervision of arrestees/detainees/prisoners housed in Female Holding Cell No. 1 and the office location is directly across the hall.

16.

Deputy McKnight called Emergency Medical Services who arrived on the scene approximately six minutes later.

17.

Ms. Cousin was transported to St. Tammany Parish Hospital and on July 1, 2013, died from the injuries she incurred at the STPJ.

18.

It is of significance that the Investigative Report prepared by the Major Crimes Unit of the STPSO investigating this matter indicates that a technician found the metal telephone cord to be 30 inches long from connection point to handset, much longer than the generally accepted correctional standards.

8

19.

This fact is increasingly alarming given that Plaintiffs have learned St. Tammany Parish Jail had a history of suicides, including another female detainee who committed suicide in 2007 in the exact manner as Ms. Cousin – hanging by a telephone cord that exceeded industry standards.  Therefore, as early as 2007, Defendants possessed specific knowledge that a long telephone cord could be used as a hanging device by an arrestee/detainee/prisoner and did nothing.

20.

Prior to her attempted suicide, STPSO/STPJ employees failed to book Ms. Cousin into the jail.  In fact, it wasn't until 8:58 p.m., minutes after she was discovered that STPSO/STPJ employees performed the booking process.

21.

Several of the forms routinely prepared during the Jail's booking process, including the Medical Route Form, STPSO Jail Booking Questions, Initial Booking Receipt, and Initial Booking Classification, were completed by correctional staff and medical personnel while paramedics were attempting to resuscitate Treshon.

22.

This point is supported by the time stamp on the booking forms, the inconsistent responses, and by the complete absence of signatures, including Treshon's.

23.

Plaintiffs' have also learned that defendants have a history of deliberate indifference exhibited towards the arrestees/detainees/prisoners that enter the STPSO jail system.

24.

In June, 2011, the United States' Department of Justice (hereinafter DOJ) began investigating the conditions of confinement at the St. Tammany Parish Jail pursuant to the Civil Rights of Institutionalized  Persons Act ("CIPRA"), 42 U.S.C. §1997.

25.

At the time, the United States conducted an onsite inspection of the jail with consultants in the fields of correctional mental health care and suicide prevention.

26.

On July 12, 2012, the DOJ concluded that certain conditions at the Jail violated the constitutional rights of individuals confined at the Jail.  Specifically, the DOJ found that the STPSO and its employees were **deliberately indifferent** to prisoners' serious mental health needs, including suicide prevention and medication management.

27.

In fact, the 2012 report by the Department of Justice's Civil Rights division specifically criticized the jail for failing to properly train its employees to screen for mental health issues.

28.

On May, 31, 2012, roughly a year after the DOJ conducted its onsite inspection, St. Tammany Parish Sheriff's Office and AmTel entered into a contractual arrangement referred to as the ("Shared Revenue" Agreement).

29.

AmTel is in the business of providing certain telecommunications equipment, charge-for-call telephones and services, and providing automated-operator assisted station to station calls.

30.

According to the Shared Revenue Agreement, the STPSO/STPJ granted AmTel an exclusive license to install and operate pay-for call telecommunications equipment at the Jail.

31.

In consideration for this exclusive license and lease agreement, AmTel agreed to pay the St. Tammany Parish Sheriff's Office commission fee of sixty-eight and ½ percent (68.5%) on Total Gross Revenue defined as all completed calls; Collect, Pre-Paid, and PIN Debit.

32.

In turn, AmTel would be responsible for the **procurement, purchase, installation, maintenance, and service of all such equipment.** AmTel also agreed to "**purchase and install all new phones**".  Finally, Amtel was responsible for maintaining the phones in good working order and keeping the enclosure and telephone equipment clean and properly repaired.

33.

Arrestees/detainees/prisoners are provided two free minutes for a telephone call if, and only if, the intended recipient can navigate the complex automated system.  This information, however, is not relayed to the person on the other line.

34.

AmTel and STPSO/STPJ receive no revenue if the attempted contact successfully navigates the automated system to receive two free minutes of call time.

35.

Louisiana Law recognizes the right of an arrested person to communicate with friends or counsel from the moment of arrest.  Specifically, Louisiana Code of Criminal Procedure Article 230 states, "The person arrested has, from the moment of his arrest, a right to procure and confer with counsel and to use a telephone or send a messenger for the purpose of communicating with his friends or with counsel."

36.

At the time of the incident, there were two telephones mounted on the wall in Female Holding Cell No. 1 of the Jail

37.

However, the automated telephone system is operated in a manner that completely frustrates the intent of Louisiana Code of Criminal Procedure Article 230.

38.

Arrestees/Detainees/Prisoners are provided two free minutes for a telephone call if, and only if, the intended recipient can navigate the complex automated system.  This information, however, is not relayed to the person on the other line.

39.

In fact, the recipient is misled to believe that in order to communicate they must set up an account with AmTel, which can only be accomplished by authorizing a $15.00 charge to a credit card.

40.

A review of the transcript from Treshon's seventeen (17) attempted telephone calls on the evening of June 28, 2013 illustrates how impossible the system is to navigate.

41.

After several unsuccessful attempts, Treshon tried to guide her recipients with instructions by stating "two free minutes" rather than her name when prompted.

42.

However, Michael Cousin and the other individuals Treshon reached out to help that evening were totally perplexed by the burdensome and misleading telephone system.

43.

Ms. Cousin was effectively denied her right to call family, friends or counsel as the jail's automated telephone system is operated in a manner that completely frustrates the intent of Louisiana Code of Criminal Procedure Art. 230.

44.

As a result, Ms. Cousin's civil rights were violated by denying her contact with anyone who might be in a position to help her.

45.

The state right to a telephone call creates a liberty interest protected by the Fourth, Sixth and Fourteenth Amendment of the United States Constitution; and due process protections -- both substantive and procedural -- of prisoner's liberty rights were protected long before Treshon's arrest.

46.

The Standard Operating Procedures for the St. Tammany Parish Sheriff's Office provide that health screens are to be performed by health trained or qualified healthcare personnel on all state offenders upon intake in the STPSO facility.  See SOP.0700:03.130.

47.

"The purpose of the health screening is to protect newly admitted offenders who pose a health safety threat to themselves or others from not receiving adequate medical attention."   The inquiry will include the following: (1) Current medical, dental or mental health problems; (5) Suicidal Risk Assessment; (6) Use of alcohol or other drugs including need for possible detoxification.  See SOP.0700:03.130.

48.

Despite having knowledge that Ms. Cousin had methamphetamine and marijuana in her system at 6:52 p.m.., no further medical screening was performed to evaluate Ms. Cousin's mental state.

49.

A positive result for methamphetamine should have triggered a Health Screening by medical personnel and closer observation as a "Special Needs Offender".

50.

Instead, Ms. Cousin was merely "accepted" into the system.  Next, Treshon was placed in a cell with five other women until she ultimately left alone with no supervision.

51.

The actions of STPSO/STPJ personnel on the evening of June 28, 2013 not only violated internal Standard Operating Procedures, but the lack of care shown to Treshon Cousin amounted to "deliberate indifference" to a serious medical need, which violates the U.S. Constitution's Eighth and Fourteenth Amendments.

52.

Bad living conditions are cruel and unusual punishment under the Eighth and Fourteenth Amendments if those conditions amount to a serious deprivation of the "minimal civilized measures of life's measures of life's necessities."   These basic human needs include personal safety, which was clearly disregarded when Ms. Cousin was confined alone in a cell with a telephone cord that exceeded generally accepted correctional standards.

## FEDERAL AND STATE CLAIMS

53.

A proximate cause of the incident and resulting physical injuries and damages to Plaintiffs was the negligence of Defendants **ST. TAMMANY PARISH SHERIFF'S OFFICE, SHERIFF JACK STRAIN, JR., IN HIS CAPACITY AS SHERIFF OF THE PARISH OF ST. TAMMANY, DEPUTY PATRICK MCKNIGHT, CORPORAL BRIGID ENGLISH, NURSE JENNIFER WALIGORA, DEPUTY JESSICA RODEN** and **DEPUTY GEORGIA ALEXANDER** which negligence is particularized in the following non-exclusive respects:

1.    As to Defendant  **ST. TAMMANY PARISH SHERIFF'S OFFICE SHERIFF JACK STRAIN, JR., IN HIS CAPACITY AS SHERIFF OF THE PARISH OF ST. TAMMANY** at the time of the incident which is the subject matter of this lawsuit:

15

a.     Failure to properly hire, supervise, train and/or retain employees of STPSO/STPJ;

b.     Creating an unreasonably unsafe condition on STPJ premises;

c.     Failure to warn plaintiff of the unreasonably unsafe condition which defendant created;

d.     Failure to adequately inspect premises and supervise operations;

e.     Failure to perform a proper medical/drug/health risk screening;

f.     Other acts of negligence and/or fault which may be shown through discovery prior to trial; and

g.     Generally, the failure of this defendant to act with the required degree of care commensurate with the existing situation.

2.     As to Defendants, **DEPUTY PATRICK MCKNIGHT, CORPORAL BRIGID ENGLISH, NURSE JENNIFER WALIGORA, DEPUTY JESSICA RODEN,** and **DEPUTY GEORGIA ALEXANDER:**

a.     Intentional and/or negligent failure to properly perform job duties;

b.     Failure to perform a proper medical/drug/health risk screening;

c.     Other acts of negligence and/or fault which may be shown through discovery at trial; and

d.     Generally, the failure of these Defendants to act with the required degree of care commensurate with the existing situation.

3.     As to Defendant **ATN, INC., and/or AMTEL**:

a.     Failure to properly **procure, purchase, install, maintain, and service the phone equipment** located in Female Holding Cell #1 at the STPJ; and

16

b.     Generally, the failure of these Defendants to act with the required degree of care commensurate with the existing situation.

4.    The proximate cause of the civil rights violations to Plaintiff was the negligence of Defendants, **ST. TAMMANY PARISH SHERIFF'S OFFICE, SHERIFF JACK STRAIN, JR., IN HIS CAPACITY AS SHERIFF OF THE PARISH OF ST. TAMMANY, DEPUTY PATRICK MCKNIGHT, CORPORAL BRIGID ENGLISH, NURSE JENNIFER WALIGORA, DEPUTY JESSICA RODEN** and **DEPUTY GEORGIA ALEXANDER**, which civil rights violations are particularized in the following non-exclusive respects:

a.     **SHERIFF JACK STRAIN, JR.** and his deputy/employee Defendants, provided inadequate medical care and poor living conditions in violation of the Eighth and Fourteenth Amendments to the United States Constitution. Under color of law, Defendant deputies failed to follow Standard Operating Procedure and provide minimal civilized measures of life's necessities to Plaintiff including, but not limited to, keeping her from serious, permanent injuries, providing proper medical screening as well as other acts in violation of her federal constitutional and civil rights;

b.     These Defendants acted in combination and in concert to commit unlawful and unconstitutional acts against Plaintiff. Furthermore, the law under the Eighth and Fourteenth Amendments in this regard is clearly established so as to defeat any purported police Defendants' qualified immunity for state law claims;

c.     At all times relevant herein, the conduct of all Defendants were subject to 42 U.S.C. § 1983, 1985, 1986, and 1988;

d.     Acting under the color of law, defendants worked a denial of **TRESHON COUSIN'S** rights, privileges, and immunities secured by the United States Constitution and by Federal law, including but not limited to the violations enumerated immediately below;

e.     Violation of 42 U.S.C. 1983 - Right to proper use of phone which jail was in violation of Louisiana Statute and federal law requiring that arrestees/detainees be given right to make a telephone call, right to proper medical treatment, right to proper supervision, by  Defendant sheriff officers under the Sheriff's control, who violated the rights, privileges, and immunities of **COUSIN,** which deprived **COUSIN** of both her liberty without due process of law and her right to equal protection of the laws, due course of justice was impeded, in violation of the United States Constitution and its Amendments;

f.     All Defendants acted in combination and in concert, including **SHERIFF JACK STRAIN, JR.**, whose "deliberate indifference in not preventing these acts," combined with the willful acts of his deputies and/or other personnel, thereby allowing the commission of these unlawful acts and violating **TRESON COUSIN's** various constitutional rights;

g.     As a result of Defendants' conspiracy  to commit illegal acts against **TRESHON COUSIN**, they are liable to plaintiff per 42 U.S.C. §1983 as well as 42 U.S.C. §1988 for attorneys' fees;

18

h.    The St. Tammany Parish Sheriff and his office are responsible for the acts and omissions of the employees and are liable for the activities of its agents, who are not employees;

i.    At all times pertinent hereto, the Defendants were acting under color of law, statutes, customs, policies, ordinances and usages of the State of Louisiana, the Parish of St. Tammany, and the **STPSO/STPJ**;

j.    At all times pertinent hereto, the **STPSO/STPJ** and/or the Sheriff failed to adopt sufficient policies to deter or prevent the violating of **TRESHON COUSIN's** civil rights;

k.    At all times pertinent hereto, the **STPSO/STPJ** and/or the Sheriff failed to develop and/or maintain a custom or policy to identify, discipline, rehabilitate and/or retrain its officers who violated **TRESHON COUSIN's** civil rights;

l.    At all times pertinent hereto, the **STPSO/STPJ** and/or the Sheriff negligently hired and retained deputies who violated **TRESHON COUSIN's** civil rights;

m.    The illegal and unconstitutional policies and procedures of the **STPSO/STPJ** were the driving force of the deprivation of **TRESHON COUSIN's** rights herein;

n.    Furthermore, through improper training, improper hiring, negligent retention, ineffective internal policies, ignoring patterns and practices of abuse, **SHERIFF JACK STRAIN, JR.** and the **ST. TAMMANY PARISH SHERIFF'S OFFICE** were deliberately indifferent to said

19

policies and procedures leading to **TRESHON COUSIN's** rights being violated;

o.   Based on the facts stated above, Plaintiff hereby asserts various claims under the Constitution, specifically Article I, Sections 2, 3, 4, and 5, and laws of the State of Louisiana, La. C.C. arts. 2315, et seq. in pari materia with Title 14 of the Louisiana Revised Statutes;

p.   Based on the facts stated above, co-defendants did knowingly and intentionally, or in the alternative negligently, violated **TRESHON COUSIN's** rights under the Louisiana Constitution, particularly Art. 1 §2 (due process of law), 3 (right to individual dignity), 20 (right to humane treatment), and 22 (access to courts); and under the laws of the State of Louisiana, including but not limited to art. 2315 (liability for acts causing damages), LSA-C.C. art. 2316 (negligence, imprudence or want of skill), LSA-C.C. art. 2317 (acts of others), LSA-C.C. art. 2320 (acts of servants), La. CCRP Art. 230. (right to make a phone call); and

q.   These non-exclusive Louisiana state law deprivations render Defendants liable to Plaintiff jointly and severally, or in solido, for full compensatory damages, including general damages, special damages, cost of this action, and legal interest.

54.

At the time of the accident sued on, all employees of **STPSO/STPJ**, were acting in the course and scope of their employment with defendant, **STPSO/STPJ**, which defendant is

vicariously liable under the doctrine of <u>respondeat superior</u> for the negligent acts of its employees.

55.

On information and belief, at the time of the incident sued on there was, in full force and effect, a policy of general liability insurance issued by **ABC INSURANCE COMPANY**, to, and in favor of, **STPSO/STPJ**, which policy provided coverage for the incidents sued on herein, and which policy inures to the benefit of Plaintiffs thereby entitling them to maintain this direct action against insurer and thereby also rendering insurer liable in solido with **STPSO/STPJ**.

56.

On information and belief, at the time of the incident sued on there was, in full force and effect, a policy of general liability insurance issued by **XYZ INSURANCE COMPANY**, to, and in favor of, **ATN, INC., and/ or AMTEL, INC.**, which policy provided coverage for the incidents sued on herein, and which policy inures to the benefit of Plaintiffs thereby entitling them to maintain this direct action against insurer and thereby also rendering insurer liable in solido with **ATN, INC., and/ or AMTEL, INC**.

**<u>DAMAGES</u>**

57.

**MICHAEL COUSIN**, as the natural father of the deceased **TRESHON COUSIN**, along with **ALANNA COUSIN** and **JULIUS MCFARLAND, JR.**, as the natural children of the deceased **TRESHON COUSIN**, fall within the appropriate class of survivors and as the named beneficiaries, they are making claims under Louisiana Civil Code article 2315.2 for wrongful death and survival action damages that they have personally suffered because of Treshon Cousin's death, including, but not limited to, past, present, and future:

a.      loss of love;

b.      loss of affection and companionship;

c.      sorrow, grief and mental anguish;

d.      loss of services;

e.      loss of support;

f.      loss of consortium;

g.      funeral expenses; and

h.      medical expenses.

58.

Plaintiffs have suffered past, present, and future damages in the following non-exclusive particulars:

a.      loss of enjoyment of life;

b.      pain and suffering;

c.      mental pain and suffering;

d.      past and future loss of income and benefits;

e.      loss of life;

f.      medical expenses;

g.      loss of family relationships, love and affection;

h.      wrongful death damages;

i.      survival damages; and

j.      any other damages available under the law that may be proven at trial.

59.

Plaintiffs request any and all other relief deemed necessary and proper by this Court.

60.

**MICHAEL COUSIN** has been appointed the legal tutor for the minors, **ALANNA COUSIN** and **JULIUS MCFARLAND, JR.**, and is the proper party to bring this action on their behalf.

61.

Plaintiffs demand a jury trial.

**WHEREFORE**, Plaintiffs pray that the Defendants be served with a copy of this Petition for Damages and be duly cited to appear and respond to this Petition for Damages; and that after due proceedings be had, this Court issue a judgment in Plaintiffs's favor and against the named Defendants herein in a full and true sum to compensate Plaintiffs, and for all other legal and equitable relief that may be deemed just and proper.

**RESPECTFULLY SUBMITTED:**

**DEGRAVELLES, PALMINTIER, HOLTHAUS & FRUGE'**

*/s/ Joshua M. Palmintier*
**JOSHUA M. PALMINTIER** (LBR No. 28712)
618 Main Street
Baton Rouge, Louisiana  70801
Telephone:  (225) 344-3735
Facsimile: (225) 408-5296
Email: jpalmintier@dphf-law.com

**SHERMAN LAW FIRM, L.L.C.**
Kea Sherman (LBR No. 30299)
4905 Freret Street
Suite B
New Orleans, Louisiana 70115
Telephone: (504) 708-4889
Facsimile: (504) 324-0665
Email: kea@shermanfirm.net

**SERVICE INFORMATION:**

**ST. TAMMANY PARISH JAIL**
Through Sheriff Jack Strain, Jr.
701 N. Columbia St.
Covington, Louisiana 70433

**ST. TAMMANY PARISH SHERIFF'S OFFICE**
Through Sheriff Jack Strain, Jr.
701 N. Columbia St.
Covington, Louisiana 70433

**DEPUTY PATRICK MCKNIGHT**
At his last known business address
701 N. Columbia St.
Covington, Louisiana 70433

**CORPORAL BRIGID ENGLISH**
At her last known business address
701 N. Columbia St.
Covington, Louisiana 70433

**NURSE JENNIFER WALIGORA**
at her last known business address
701 N. Columbia St.
Covington, Louisiana 70433

**DEPUTY JESSICA RODEN**
at her last known business address
701 N. Columbia St.
Covington, Louisiana 70433

**DEPUTY GEORGIA ALEXANDER**
at her last known business address
701 N. Columbia St.
Covington, Louisiana 70433

24

**SHERIFF JACK STRAIN, JR., IN HIS CAPACITY AS SHERIFF OF THE PARISH OF ST. TAMMANY**
at his last known business address
701 N. Columbia St.
Covington, Louisiana 70433

**ATN, INC**.
Through its agent for service of process
NATIONAL REGISTERED AGENTS, INC.
800 S. Gay Street, Suite 2021
Knoxville, Tennessee 37929-9710