**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

MICHAEL COUSIN                                    CIVIL ACTION

VERSUS                                            NO. 14-1514

ST. TAMMANY PARISH JAIL, ET AL.                   SECTION "B"(1)

<u>ORDER AND REASONS</u>

Before the Court are six pending motions: (1) a "Motion for Summary Judgment" filed by ATN, Inc. d/b/a AmTel, Inc. ("ATN") and Selective Way Insurance Company (collectively "Defendants") (Rec. Doc. 108); (2) a "Motion for Summary Judgment on Cross-Claim" filed by St. Tammany Parish Sheriff Rodney "Jack" Strain (Rec. Doc. 118); (3) a "Cross-Motion for Summary Judgment" filed by ATN concerning the Sheriff's cross-claim (Rec. Doc. 130); (4) a motion in limine filed by Plaintiffs to exclude certain evidence (Rec. Doc. 135); (5) a motion in limine filed by Plaintiffs to include specific publications and ATN's subsequent measures (Rec. Doc. 136); and (6) a motion to exclude certain evidence filed by Defendants (Rec. Doc. 137). All of the motions were timely opposed. For the reasons outlined below,

**IT IS ORDERED** that Plaintiffs' "Motion in Limine to Exclude Contents of Decedent's Cell Phone, Decedent's Prior Arrest History, Excerpts from Michael Cousin's Deposition Testimony, and Nancy Favaloro's Expert Report and Testimony" (Rec. Doc. 135) is

1

**DENIED**, provided Defendants establish a proper foundation for the questioned evidence at trial.

**IT IS FURTHER ORDERED** that Plaintiffs' "Motion in Limine to Include Specific Publications and Defendant's Subsequent Measures" (Rec. Doc. 136) is **GRANTED** in part and **DENIED** in part as set forth below.

**IT IS FURTHER ORDERED** that Defendants' motion to "Exclude Testimony of Dr. Culbertson and Mr. Quinn, Evidence of Subsequent Remedial Measures, and Argument Regarding Plaintiffs' Entitlement to Damages for Loss of Financial Support" (Rec. Doc. 137) is **GRANTED** in part and **DENIED** in part as set forth below.

**IT IS FURTHER ORDERED** that all three motions for summary judgment are **DENIED**. Rec. Docs. 108, 118, 130.

I.   <u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

This case arises out of the tragic death of Treshon Cousin, who, while being held in the St. Tammany Parish Jail, hung herself with the cord of the holding cell telephone and later died from the injuries incurred in doing so. Rec. Doc. 1 at 7-8. On June 28, 2013, Sheriff's Office deputies arrested Cousin on an outstanding warrant. Rec. Doc. 108-4 at 9. During the intake process, Cousin submitted to a urine sample that tested positive for marijuana and methamphetamines. Rec. Doc. 108-4 at 19. However, she denied any suicidal or homicidal thoughts, and one of the Sheriff's Office nurses stated she was "unaware of any indications that Ms. Cousin

2

was suicidal or depressed." Rec. Doc. 108-4 at 19. One of the arresting deputies had the same observation, noting that Cousin never exhibited any signs of suicidal intentions. Rec. Doc. 108-4 at 9. Thereafter, deputies placed Cousin in the standard female holding cell. Rec. Doc. 108-4 at 18. Deputies eventually removed all other detainees from the cell. Rec. Doc. 108-4 at 18. After unsuccessfully attempting to make numerous phone calls from the telephones in the holding cell, Cousin wrapped the cord around her neck, wrapped the phone handset around the cord to secure the cord around her neck, knelt down, and then removed her legs from underneath her body, effectively hanging herself. Rec. Doc. 108-4 at 18. Approximately twenty-five minutes later, jail personnel arrived at the cell and began providing aid. Rec. Doc. 108-4 at 18. Cousin was later pronounced dead at the hospital. Rec. Doc. 18-4 at 9.

On June 30, 2014, Treshon's father, Michael Cousin, filed suit on behalf of himself, Treshon, and her two children, Alanna Cousin and Julius McFarland, Jr. Rec. Doc. 1 at 2. The following parties were named as defendants: the St. Tammany Parish Jail ("the Parish Jail"), the St. Tammany Parish Sheriff's Office (the "Sheriff's Office"), the St. Tammany Parish Government ("St. Tammany"), Deputy Patrick McKnight, Corporal Brigid English, Nurse Jennifer Waligora, Deputy Jessica Roden, Deputy Georgia Alexander, Warden Greg Longino Sheriff Jack Strain, Jr., ATN, Selective Way

Insurance Company ("Selective Way"), and Travelers Indemnity Company ("Travelers"). Rec. Docs. 1 at 4; 83 at 2-4.

Subsequently, Plaintiff voluntarily dismissed both the Parish Jail and the Sheriff's Office. Rec. Doc. 22. The Court also granted St. Tammany's Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which dismissed all claims asserted against St. Tammany Parish Government. Rec. Doc. 95. Thereafter, while the individual Sheriff's Office Defendants' motion for summary judgment was pending before this Court, Plaintiffs and those Defendants evidently entered into a settlement agreement.[1] However, rather than seeking a separate dismissal as a result of the settlement, Plaintiffs chose not to challenge the Defendants' motion for summary judgment. The Court then granted the motion as unopposed. Still active are the Plaintiffs' claims against ATN and Selective Way and the Sheriff's cross-claim against ATN.

ATN is in the business of providing telecommunications equipment and services to correctional facilities. Rec. Doc. 108-1 at 4. In April 2012, ATN contracted with the Sheriff's Office to receive an "exclusive license to install and operate pay-for-call telecommunications equipment" at the Parish Jail. Rec. Doc. 108-1 at 4. The contract made ATN "responsible for the procurement, purchase, installation, maintenance and service" of the jailhouse

---

[1] *See* Rec. Docs. 129, 133 (referencing a settlement agreement between Plaintiffs and the Sheriff's Office Defendants). Counsel for the parties confirmed such a settlement by telephone.

telephones. Rec. Doc. 108-1 at 4. ATN was also responsible for selecting the equipment. Rec. Doc. 109-3 at 3-4. ATN then installed two telephones in the standard female holding cell where the Sheriff's Office later held Treshon Cousin. Rec. Doc. 108-1 at 4. Neither of the telephones were of the cordless variety—also known as "suicide-deterrent" or "drunk tank" telephones. Rec. Doc. 108-1 at 4-5. The telephone that Cousin used to hang herself had, at the very least, an 18-inch cord reaching from the handset to the connection point on the phone itself.[2] Rec. Doc. 108-1 at 5, 12. Plaintiffs maintain that ATN's negligence contributed to the death of Treshon Cousin.

Selective Way is ATN's insurer. Rec. Doc. 100 at 17-18. Plaintiffs allege that Selective Way issued a general liability insurance policy to ATN that provided coverage for the incident at issue in this case during the relevant time period. Rec. Doc. 83 at 31. Accordingly, Plaintiffs claim that Selective Way remains liable in solido with ATN. Rec. Doc. 83 at 31.

Pursuant to the contract between ATN and the Sheriff's Office (hereinafter "the Telephone Contract"), ATN agreed to "indemnify, defend, and hold Customer harmless from any liability in connection with the placement, maintenance, or usage of the telephone equipment." Rec. Doc. 134-1 at 2. Sheriff' Strain's cross-claim

---

[2] The parties dispute the exact length of the cord. Rec. Doc. 109-1 at 2.

seeks defense and indemnification from ATN for all of the Sheriff's Office employees based upon that contractual provision. Rec. Doc. 30. The Sheriff made an initial demand, which was rejected by ATN. Rec. Docs. 30-2; 30-3.

## II.  <u>DISCUSSION</u>

### a. Motions in Limine

Provided that Defendants establish a proper foundation for the questioned evidence at trial, Plaintiffs' motion in limine to exclude contents of decedent's cell phone, her prior conviction history, excerpts from Michael Cousin's deposition testimony, and Nancy Favaloro's expert report and testimony is denied. Defendant is warned, however, that in the course of presenting foundational evidence about any contested prior conviction, it must present as part of that evidence certified copies of the conviction from the pertinent court. Further, there shall be no reference to that conviction, contents of cell phone records, Cousin's deposition testimony at issue, or reliance on the same by experts, unless and until the Court rules upon its admissibility using the process explaiined to all counsel outside the jury's presence, etc.

Plaintiffs' motion in limine to include specific publications and ATN's subsequent remedial measures is granted in part and denied in part. The motion is granted with respect to the jail suicide reports, but only if Plaintiffs lay a sufficient foundation for the same at trial, and it is denied as to Plaintiffs seeking

admission of those reports as trial exhibits. Additionally, the motion is denied without prejudice to reurge at trial the evidence of subsequent measures if the Defendant relies upon a feasibility defense.

Finally, Defendants' motion to exclude certain evidence is denied in part and granted in part. The motion is denied with respect to the exclusion of expert testimony from W. Patton Culbertson, Ph.D. and the exclusion of arguments regarding Plaintiffs' entitlement to damages for loss of financial support. The motion is granted in part with respect to the exclusion of Michael Quinn's legal conclusions; however, to the extent Quinn's opinion references industry standards and compliance with the same, thus limited, his opinion in that regards may become admissible. Finally, as discussed above, evidence of subsequent remedial measures will be excluded unless Defendant relies upon a feasibility argument.

### b. Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also TIG Ins. Co. v. Sedgwick James of Washington*, 276

F.3d 754, 759 (5th Cir. 2002). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. If and when the movant carries this burden, the non-movant must then go beyond the pleadings and present other evidence to establish a genuine issue. *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993).

### 1. ATN and Selective Way's Motion for Summary Judgment

ATN and Selective Way move for summary judgment on the grounds that ATN did not breach any duty owed to Ms. Cousin, and, even if it did, no such breach was the legal cause of her death. First, Defendants argue that their selection of phones for the standard

female holding cells conformed to the industry standard. Rec. Doc. 108-1 at 8. Second, Defendants claim that ATN had no duty to install a drunk tank or suicide-deterrent telephone in the cell in question because it was a standard holding cell. Rec. Doc. 108-1 at 8. Defendants also argue that ATN did not have a legal duty to provide Ms. Cousin with a free two-minute phone call, and, even assuming it did, any breach of that duty was not the cause-in-fact or legal cause of her death. Rec. Doc. 108-1 at 8-9. Finally, Defendants contend that Ms. Cousin's decision to end her life was a superseding cause, thus barring liability. Rec. Doc. 108-1 at 21. Consequently, Defendants urge this Court to grant their Motion and dismiss all of Plaintiffs' claims against them.

Plaintiffs oppose the Motion on the basis that there are numerous issues of material fact precluding summary judgment at this time. First, Plaintiffs claim that ATN had a duty to use reasonable care in selecting, installing, and maintaining the telephones at the Parish Jail. Rec. Doc. 109 at 6. Plaintiffs also submit that even if the Court finds no duty of reasonable care, summary judgment is still inappropriate at this time due to the remaining factual disputes. Rec. Doc. 109 at 5. Further, Plaintiffs claim that ATN breached their duty by placing the wrong type of phone in the holding cell. Rec. Doc. 109 at 9. More specifically, Plaintiffs argue that ATN knew or should have known of similar incidents occurring in prisons and knew or should have known about

the Sheriff's Office's practice of placing all female pretrial detainees in the standard holding cell. Rec. Doc. 109 at 9-13. Therefore, Plaintiffs claim that ATN breached its duty by not providing the appropriate type of phone that could have avoided this foreseeable injury. Rec. Doc. 109 at 9-13. Finally, Plaintiffs contend that ATN's breach caused Ms. Cousin's death, because, but for ATN's negligence, Ms. Cousin would not have been able to hang herself with the telephone cord. Rec. Doc. 109 at 16. Accordingly, Plaintiffs ask this Court to deny Defendants' Motion.

Defendants' reply memorandum primarily attacks Plaintiff's argument that the suicide was foreseeable. They claim that several courts have rejected similar arguments in the past and that Plaintiffs have mischaracterized the evidence. Rec. Doc. 123 at 4-7. Furthermore, Defendants argue that suicide-deterrent phones are not suicide-proof, which is seemingly meant to show that any breach of a duty was not the legal cause or cause-in-fact of Ms. Cousin's death. *See* Rec. Doc. 123 at 7-8. Plaintiffs' sur-reply attempts to rebut these arguments. Rec. Doc. 124 at 4-6.

### A. Negligence Standard

In a negligence action, "the plaintiff has the burden of proving negligence on the part of the defendant by a preponderance of the evidence." *Hanks v. Entergy Corp.*, 944 So. 2d 564, 578 (La. 2006). Accordingly, the movant here, Defendants, need only point to the absence of evidence to shift the burden to the non-movant,

Plaintiffs. Louisiana courts employ a duty-risk analysis to determine whether a Plaintiff should prevail on a negligence claim. *Long v. State ex rel. Dept. of Transp. And Dev.*, 04-0485, p. 21 (La. 6/29/05); 916 So. 2d 87, 101. In making the requisite analysis, four questions are to be considered:

> "(1) Was the conduct in question a cause-in-fact of the resulting harm?
>
> (2) What if any, duties were owed by the respective parties?
>
> (3) Were the requisite duties breached?
>
> (4) Was the risk and harm caused within the scope of protection afforded by the duty breached?"

*Faucheaux v. Terrebonne Consol. Gov't*, 615 So. 2d 289, 292 (La. 1993) (citing *Mart v. Hill*, 505 So.2d 1120, 1122 (La.1987)); *Socorro v. City of New Orleans*, 579 So. 2d 931, 938-39 (La. 1991). All four questions must be answered affirmatively for Plaintiff to prevail. *Id.*

### B. Cause-in-fact

"Cause-in-fact is generally a 'but for' inquiry." *Faucheaux*, 615 So. 2d at 292. If Plaintiff's injuries were unlikely to occur "but for" Defendant's conduct, then such conduct is a cause-in-fact. *Id.* "To the extent that the defendant's actions had something to do with the injury plaintiff sustained, the test of a factual, causal relationship is met." *Id.* "The cause-in-fact issue is usually a jury question unless reasonable minds could not differ."

11

*Thomas v. Sisters of Charity of the Incarnate Word*, 38,170, p. 12
(La. App. 2 Cir. 3/19/04); 870 So. 2d 390, 398 (citing *Cay v. State, Dept. of Transp. & Dev.*, 93-0887 (La. 1/14/94), 631 So. 2d 393).

Plaintiffs maintain that "but-for the negligence of ATN in placing the wrong type of phone in the wrong type of jail cell, Ms. Cousin would not have committed suicide." Rec. Doc. 109 at 16. It is certainly reasonable to argue that ATN's decision to install a phone with a cord as opposed to a suicide-deterrent phone "enhanced the chance of the accident occurring," thus making it a cause-in-fact. *See Roberts v. Benoit*, 605 So. 2d 1032, 1052 (La. 1991). Conversely, another could reasonably argue, as Defendants do, that Cousin could just have easily hung herself with an article of clothing, shoelace, or other available instrumentality. As both arguments appear to have some merit, the Court finds that reasonable minds could disagree on this issue, meaning it is best left for a jury.

### C. Duty

Whether a duty is owed is a question of law. *Lemann v. Essen Lane Daiquiris, Inc.*, 05-1095, p. 8 (La. 3/10/06); 923 So. 2d 627, 633. "The inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty." *Id.* Here, Plaintiff maintains that ATN "had a duty to act in a reasonably

prudent way when selecting, placing, installing, and maintaining telephonic jail equipment." Rec. Doc. 109 at 5. Defendant, framing the issue more narrowly, claims that ATN did not have a duty to install a drunk tank or suicide-deterrent telephone.[3]

Louisiana law recognizes a general duty to exercise reasonable care. *See, e.g., Walker v. Union Mill, Inc.*, 369 So. 2d 1043, 1048 (La. 1979). While ATN did not have direct contact with Cousin, that does not preclude the existence of a general duty of reasonable care. "The responsibility of a contracting party to a third person with whom he has made no contact has a long history."[4] WILLIAM L. PROSSER, LAW OF TORTS 622 (4th ed. 1971). Louisiana law requires courts to "approach the duty element of the negligence analysis from a policy perspective," *Reynolds v. Bordelon*, 14-2362, p. 8 (La. 6/30/15); 172 So. 3d 589, 596, considering all the facts and circumstances of the case at hand. *See, e.g., Chaisson v. Avondale Industries, Inc.*, 05-1511, p. 12 (La. App. 4 Cir. 12/20/06); 947 So. 2d 171, 182.

---

[3] Defendants also argue that ATN did not have a duty to provide Ms. Cousin with a free two-minute phone call, which Plaintiffs apparently do not dispute because they fail to address it in their opposition.

[4] "In other words, the absence of 'privity' between the parties makes it difficult to found any duty to the plaintiff upon the contract itself. But by entering into a contract with A, the defendant may place himself in such a relation toward B that the law will impose upon him an obligation, sounding in tort and not in contract, to act in such a way that B will not be injured. The incidental fact of the existence of the contract with A does not negative the responsibility of the actor when he enters upon a course of affirmative conduct which may be expected to affect the interests of another person." WILLIAM L. PROSSER, LAW OF TORTS 622 (4th ed. 1971).

Considering all of the facts and circumstances of this case, the Court finds that ATN had a duty to use reasonable care in selecting and installing the telephone equipment for use in the Parish Jail so as to reasonably ensure the safety of detainees. In this case, however, the primary issue is not whether a duty existed, but the exact scope of that duty and whether ATN breached that duty.

### D. Breach and Scope of the Duty

With respect to these elements, an essential inquiry disputed by the parties is whether it was reasonably foreseeable that Cousin would be placed in a standard holding cell and would choose to hang herself with the phone cord of the telephone in that cell. Whether the harm suffered by Plaintiff was reasonably foreseeable to ATN is an issue of fact that may preclude summary judgment.

### i. ATN's knowledge concerning the prevalence of jailhouse suicides

Plaintiffs maintain that suicide by corded phone hangings were a known industry phenomenon and that ATN knew or should have known of that phenomenon at the time of Cousin's death. Rec. Doc. 109 at 9. To support that claim, Plaintiffs point to multiple pieces of evidence. Plaintiffs point to the deposition of ATN CEO Michael Leyland to demonstrate that the company had at least some level of knowledge concerning the existence of jailhouse suicides by telephone cord. During his deposition testimony, Leyland

14

indicated that he knew of inmates using phone cords as nooses to commit suicide prior to June 28, 2015, but that he only knew of it happening "extremely rarely." Rec. Doc. 109-4 at 13. Karen Doss Harbison, ATN's President at the time of the agreement between the Sheriff's Office and ATN, also testified that she was aware of such suicides "happening occasionally." Rec. Doc. 109-3 at 5. Moreover, TMG, the telephone manufacturer from whom ATN purchased their phones, began developing cord free phones for correctional facilities that allowed them to "eliminate . . . potential hangings and other threats of violence." Rec. Doc. 109-6 at 4. Plaintiffs also point to the testimony of jailhouse expert Michael Quinn and two publications, which they claim demonstrate that jailhouse suicides by telephone cord were a "well known phenomenon." Rec. Doc. 109 at 9-10.[5] The totality of the admissible evidence presented by Plaintiffs demonstrates that there remains a genuine issue of material fact concerning whether ATN knew or should have known about other jailhouse suicides similar to that of Cousin and whether such knowledge could make Cousin's injuries reasonably foreseeable.

### ii. ATN's knowledge of the procedures employed at the Parish Jail

Plaintiffs point to the deposition testimony of the Parish Jail's Medical Director, Dr. Demaree Inglese, to demonstrate that

---

[5] The extent of the admissibility of these documents and Quinn's testimony is addressed above.

the female holding area was also used to house suicidal female inmates and intoxicated female inmates. Dr. Inglese testified that when a pretrial detainee is initially brought to the jail and it is suspected that she is under the influence of drugs or alcohol, she is kept in female holding. Rec. Doc. 109-5 at 4. Dr. Inglese further testified that all female pretrial detainees are put in female holding when they initially arrive. Rec. Doc. 109-5 at 4-5.

Plaintiffs then point to the deposition testimony of Dennis Wing, an employee of ATN responsible for repairing the phones at the Parish Jail. Plaintiffs claim that Wing's testimony shows that he knew the Sheriff's Office did not use separate drunk tanks for intoxicated pretrial detainees. Rec. Doc. 109 at 12. As Defendants point out in their reply memorandum, this interpretation of Wing's testimony is deceptive. Wing specifically stated the he had "no idea" whether the Sheriff's Office used the holding cells as drunk tanks. Rec. Doc. 109-7 at 2. However, he did state that, as far as he was aware, there were no drunk tanks separate from the holding cells. Accordingly, Wing's testimony shows that, if it is in fact true that there were no female drunk tanks, then perhaps ATN actually knew, or at least should have known, that intoxicated females were held in the standard holding cells, even if Wing or others did not know so definitively. Plaintiffs thus raise another genuine issue of material fact as to whether ATN knew or should

16

have known about the Sheriff's Office practice of placing all female pretrial detainees in the standard holding cell.

The outcome of these factual issues will determine whether ATN should have reasonably foreseen the harm suffered by Cousin. Such resolution is necessary to determine the scope of ATN's duty and whether a breach occurred. Defendants' argument that ATN complied with the industry standard of placing phones with cords in standard holding cells does not preclude summary judgment because the *reasonableness* of the custom, in light of the circumstances, determines whether a breach occurred. *See Cassanova v. Paramount-Richards Theatres*, 16 So. 2d 444, 448 (La. 1943); *Collett v. Branch*, 516 So. 2d 450, 452 (La. App. 1 Cir. 1987). Moreover, Defendants argument that Cousin's decision to hang herself was a superseding cause does not preclude summary judgment because an intervening cause is deemed superseding only if unforeseeable. *See Titard v. Lumbermen's Mut. Cas. Co.*, 282 So. 2d 474, 478 (La. 1973) As discussed above, the foreseeability of Cousin's suicide remains at issue, and it is relevant to both defenses. Accordingly, Defendants' Motion for Summary Judgment must be denied.

### 2. Cross Motions for Summary Judgment on the Cross-Claim

Sheriff Strain's motion for summary judgment seeks defense and indemnity from ATN for him and his staff. Rec. Doc. 118. Despite the settlement with Plaintiffs, and thus no possibility of

a money judgment against him or his staff members, Sheriff Strain urges this Court to grant its motion declaring that ATN owes them defense costs as well as indemnification for the settlement amount. *See* Rec. Docs. 118 at 1; 133 at 1-2. Strain argues that under the "connexity analysis" laid out by the Louisiana Supreme Court in *Berry v. Orleans Parish School Board*, 2001-3283 (La. 6/21/02), 830 So. 2d 283, the plain language of the contract requires ATN to provide defense and indemnity no matter who is deemed to be at fault. Rec. Doc. 118-2 at 5-6. Moreover, Strain argues, because ATN drafted the contract, any ambiguity should be construed against it. Rec. Doc. 118-2 at 6-7. Finally, Strain makes the argument that, if the Court interprets the contract not to cover suits arising out of the Sheriff's own negligence, it will render the relevant provision meaningless in contravention of basic principles of contract interpretation. Rec. Doc. 118-2 at 7-8. Accordingly, Strain contends that the Court should grant summary judgment in his favor, declaring that ATN must provide Strain and his staff with a complete defense and indemnity for all of Plaintiffs' claims even if the Sheriff or his employees are deemed to be at fault for Cousin's death.

In its opposition to the Sheriff's motion and its own cross-motion for summary judgment, ATN argues that the Telephone Contract's indemnity provision does not unequivocally state that it will indemnify the Sheriff for his own negligence as required

by Louisiana law. Rec. Docs. 129 at 3-5; 130-1 at 1. Additionally, ATN contends that Plaintiff's claims in this matter do not arise from "the placement, maintenance, or usage of the telephone equipment," meaning the indemnity provision does not cover this action whatsoever. Rec. Docs. 129 at 5-7; 130-1 at 1. For these reasons, ATN urges the Court to dismiss Sheriff Strain's cross-claim with prejudice. In response to ATN's cross-motion for summary judgment, Sheriff Strain argues that unresolved issues of fact must bar dismissal of the cross-claim.[6] Rec. Doc. 134 at 3-4.

The interpretation of a contract is an issue of law for the court, meaning it is ripe for resolution on summary judgment. *Higbee Co. v. Greater Lakeside Corp.*, No. 06-2848, 2007 WL 1175229, at *3 (E.D. La. Apr. 20, 2007) (citing *Amoco Prod. Co. v. Texas Meridian Res. Expl. Inc.*, 180 F.3d 664, 669 (5th Cir. 1999)). Under Louisiana law, the judicial responsibility in interpreting contracts is to determine the common intent of the parties. LA. CIV. CODE ANN. art. 2045. *See also La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-0911 (La. 01/14/94), 630 So. 2d 759, 763. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. CIV. CODE ANN. art. 2046.

---

[6] Sheriff Strain also contends that ATN's motion is untimely under the Court's scheduling order. Rec. Doc. 134 at 1. However, the Sheriff ignores this Court' prior orders that extended certain pretrial deadlines in response to Plaintiffs' expert suffering a massive heart attack. *See* Rec. Docs. 106, 125.

Nevertheless, Louisiana public policy disfavors indemnification of a party for liability resulting from that party's own negligence. *Berry*, 830 So. 2d at 286. An indemnity contract or provision "will not be construed to indemnify an indemnitee against losses resulting to him through his own negligent acts unless such intention is expressed in unequivocal terms." *Perkins v. Rubicon*, 563 So. 2d 258, 259 (La. 1990).

Examples of unequivocal language permitting such indemnification are "even though caused by the negligence of [the indemnitee]"[7] and "[w]hether caused by [the indemnitee's] negligence or otherwise."[8] On the other hand, Louisiana courts adhere to the majority view that general words such as "any and all liability" "do not necessarily import an intent to impose an obligation so extraordinary and harsh as to render an indemnitor liable to an indemnitee for damages occasioned by the sole negligence of the latter." *Arnold v. Stupp Corp.*, 205 So. 2d 797, 799 (La. App. 1 Cir. 1967). *See also Reph v. Hubbard*, No. 07-7119, 2008 WL 1774349, at *4 (E.D. La. Apr. 15, 2008) ("Since *Arnold*, courts in Louisiana have adhered to the majority view [that] language that merely states that indemnification must occur for 'any and all claims' without providing a section stating 'no matter which party causes the negligence' or some other such provision

---

[7] *Perkins*, 563 So. 2d at 259.
[8] *Polozola v. Garlock, Inc.*, 343 So. 2d, 1000, 1002-03 (La. 1977).

'cannot be read as including the extraordinary and harsh obligation to indemnify the indemnitee for damages occasioned by the sole negligence of the latter.'") (internal citations omitted).[9]

Here, the relevant provision states that "[ATN] shall indemnify, defend and hold [the Sheriff] harmless from any liability in connection with the placement, maintenance, or usage of the telephone equipment." Rec. Doc. 134-1 at 2. The term "any liability" undoubtedly falls within the category of general words that do not necessarily evidence an intent to indemnify for liability caused solely by the indemnitee. Moreover, no other terms within the contract evidence an intent for ATN to indemnify the Sheriff for liability deriving from the Sheriff's negligence. Accordingly, this Court finds that, due to the lack of an unequivocal statement on the issue, the indemnification provision does not require ATN to indemnify the Sheriff for liability caused by the Sheriff's negligence. However, this Court's inquiry does not end there.

There is a possibility that the trier of fact will determine that Cousin's death resulted solely from the negligence of ATN. If the trier of fact determines that ATN is solely responsible for

---

[9] The Sheriff's argument that the connexity analysis outlined in *Berry* should govern is misplaced because that opinion clearly states that the connexity analysis is triggered by an indemnification provision's use of the term "arising out of," which is not present in the Telephone Contract. *See Berry*, 830 So. 2d at 287. Moreover, the contractual language in that case explicitly addressed the issue of fault in the indemnification provision, making it an inapposite comparison to the case at hand. *See id.*

Cousin's death by negligently selecting a corded phone and placing it in the standard holding cell, such would qualify as liability "in connection with the *placement*, maintenance, or usage of the telephone equipment." *See* Rec. Doc. 134-1 at 2 (emphasis added). ATN concedes that the term "placement" refers to the act of placing something somewhere in a deliberate fashion. *See* Rec. Doc. 129 at 7 (citing the Oxford Advanced American Dictionary). Here, ATN deliberately chose to place the corded phone in a standard female holding cell. Furthermore, under the plain and ordinary meaning of "in connection with," this matter is in connection with ATN's decision regarding the placement of the telephone equipment because the two are associated, though not necessarily causally linked. *See Jackson v. Lajaunie*, 270 So. 2d 859, 864 (La. 1972) (noting that the term "in connection with" is broader than "arising out of" and means "linked" or "associated with"); *Smith v. Lucent Technologies, Inc.*, No. 02-0481, 2004 WL 515769, at *8 (E.D. La. Mar. 16, 2004) (noting that the terms "related to" and "in connection with" are broader terms not necessarily tied to the concept of causal connection). Consequently, the Sheriff's liability resulting from settlement is in connection with the placement of the telephone equipment. Yet, whether ATN must indemnify the Sheriff for that liability and cover defense costs

turns on whether any fault is allocated to the Sheriff and his employees.[10]

The indemnity provision in question lacks the unequivocal language necessary to find that it supports indemnification of the Sheriff for liability arising from his own negligence. Therefore, the Sheriff's motion for summary judgment must be denied. However, that does not mean that the cross-claim must necessarily be dismissed. The filing of the case at bar and the Sheriff's subsequent liability as a result of settlement are connected with ATN's placement of certain telephone equipment in the female holding cell. Therefore, though the indemnification provision will not protect the Sheriff from liability due to his own negligence, it will require ATN to indemnify and defend the Sheriff if the trier of fact determines that ATN is wholly at fault. Thus, ATN's motion for summary judgment must also be denied.

## III. <u>CONCLUSION</u>

For all of the reasons outlined above,

**IT IS ORDERED** that Plaintiffs' "Motion in Limine to Exclude Contents of Decedent's Cell Phone, Decedent's Prior Arrest History, Excerpts from Michael Cousin's Deposition Testimony, and Nancy Favaloro's Expert Report and Testimony" (Rec. Doc. 135) is

---

[10] As mentioned above, the Sheriff argues that interpreting the clause to bar indemnification for his own negligence renders the clause meaningless. However, as is evidenced by the above discussion, the indemnification clause may still lead to indemnification even without the Sheriff being found negligent. Accordingly, that argument lacks merit.

**DENIED**, provided Defendants establish a proper foundation for the questioned evidence at trial.

**IT IS FURTHER ORDERED** that Plaintiffs' "Motion in Limine to Include Specific Publications and Defendant's Subsequent Measures" (Rec. Doc. 136) is **GRANTED** in part and **DENIED** in part as set forth above.

**IT IS FURTHER ORDERED** that Defendants' motion to "Exclude Tetimony of Dr. Culbertson and Mr. Quinn, Evidence of Subsequent Remedial Measures, and Argument Regarding Plaintiffs' Entitlement to Damages for Loss of Financial Support" (Rec. Doc. 137) is **GRANTED** in part and **DENIED** in part as set forth above.

**IT IS FURTHER ORDERED** that all three motions for summary judgment are **DENIED**. Rec. Docs. 108, 118, 130.

New Orleans, Louisiana, this 28th day of April, 2016.


_____
UNITED STATES DISTRICT JUDGE